GEORGE H. HACKWORTH *et al.*, Appellants, v. ANTHONY
ZEITINGER, Respondent.

St. Louis Court of Appeals, February 2, 1892.

1.   Statute of Frauds : PLEADING.   To be available as a defense in
an action instituted in a court of record the statute of frauds must
be pleaded.

2.   Practice, Trial : VERDICT : IMMATERIAL VARIANCE BETWEEN JUDG-
MENT AND VERDICT.   Instead of making separate findings upon the
plaintiffs' cause of action and the defendant's counterclaim, the
jury returned a general verdict, which stated only that they found
the issues for the defendant.   The only controversy in the cause,
however, related ,to three items of the defendant's counterclaim.
If the jury had found for the plaintiffs on any one of these items

their verdict must have been in his favor in some sum ; but the finding on these three items being for the defendant, the verdict should have been for seventy-eight cents in his favor. The court entered judgment for that sum in favor of the defendant. *Held*, that the judgment corresponded in substance with the verdict, and should not be arrested.

*Appeal from the Reynolds Circuit Court.*—HON. J. F. GREEN, Judge.

AFFIRMED.

*Charles D. Yancey,* for appellants.

*S. R. Durham* and *L. F. Dinning,* for respondent.

ROMBAUER, P. J.—The plaintiffs are members of a firm composed of four persons engaged in the manufacture of lumber. In April, 1890, the defendant sent a bill for fifteen thousand, five hundred feet of oak lumber to the plaintiffs' mill, which the plaintiffs agreed to cut and deliver free on board of cars at a certain switch on the St. Louis & Iron Mountain railroad for $16 per one thousand feet. The plaintiffs cut and delivered the lumber, and bring this action against the defendant to recover $248, being the contract price of the lumber thus delivered.

The defendant filed his answer and counterclaim, setting up the following facts : He denied any sale of the lumber made to him. He claimed that he shipped for the plaintiffs five carloads of lumber, for which he received in the aggregate $542.23, for which he accounted to the plaintiffs as per a detailed account filed with his answer, which account shows a balance due to him of seventy-eight cents, for which amount he asks judgment against the plaintiffs.

The cause was tried before a jury, who brought in a general verdict in this form: "We, the jury, find the

issues for the defendant, A. Zeitinger." The court upon this finding entered a judgment in favor of the defendant and against the plaintiffs for seventy-eight cents and costs. The plaintiffs filed their motion for new trial and also in arrest of judgment, alleging as a ground of the latter motion, that upon the whole record the judgment was erroneous. These motions were overruled, and the plaintiffs, appealing, assign for error that the court admitted illegal testimony for the defendant, gave erroneous instructions to the jury, and erred in overruling their motion in arrest of judgment.

Upon the trial the plaintiffs gave evidence tending to support their cause of action. The defendant thereupon gave evidence to the following effect: He did not buy any lumber from the plaintiffs, but did ship lumber for them from time to time, and had thus shipped from fifty to one hundred carloads. He received orders from third parties, and sent them out to the mill of the plaintiffs who filled them. It was conceded that former orders, thus filled, were filled subject to inspection by the buyers. It was also conceded by the plaintiffs that the account filed with the defendant's answer was correct except as to charges for culls for lumber, amount of the note paid to Allen, and amount of charges for shortage on lumber. In regard to the first items in dispute the defendant gave evidence tending to show that, when he received the bill for the fifteen thousand, five hundred feet of lumber sued for, he sent the order received out to plaintiffs' mill; that that order contained upon its face the words, "subject to inspection;" that, as soon as he received word from the buyers that certain parts of the lumber were rejected upon inspection, or *culled* according to the technical phrase, he notified the plaintiffs, and the plaintiffs saw him, and agreed with him as to what should be done with the rejected lumber. On this part of the case the plaintiffs objected to the testimony of the defendant, because it appeared from it that he did not personally know of the condition of the lumber, or

what part thereof was properly rejected, but testified merely from information. This objection was well taken at the time, and if the evidence had stood alone the reception of the evidence would have been prejudicial error. But, when this evidence was connected with further evidence that the information thus received was communicated to the plaintiffs, and that they acted upon it and requested the defendant to dispose of the rejected lumber on the best terms obtainable, the evidence became competent.

In regard to the second item in dispute, the defendant gave evidence tending to show that the plaintiffs desired to buy certain lands, but, not having the money, agreed with the defendant that he should take the title thereto in his own name, and hold it for the plaintiffs, until they repaid to him whatever he paid on account thereof; that the defendant thereupon paid on account of the lands $100.85, and did take the title in his own name, but that the plaintiffs, upon ascertaining that the title was defective, refused to repay him the money and take the title off his hands. The defendant also gave evidence tending to show that the shortage amounted to $4.94.'

When the testimony touching this land transaction was offered by the defendant, the plaintiffs objected to it as being outside of the issues in the cause, incompetent, irrelevant and immaterial. It does not appear that the objection that this contract was within the statute of frauds was ever raised either by the pleadings or by objection to the evidence on that specific ground, or even by instructions. The plaintiff's objection, therefore, now made for the first time, that this contract was within the statute, and not provable by oral evidence, even if it were otherwise tenable, must be disregarded. The statute of frauds, to be available in courts of record, must be pleaded (*Gardner v. Armstrong*, 31 Mo. 535; *Maybee v. Moore*, 90 Mo. 340), nor can a party avail himself of it *in any case*, where he has failed to inform the

trial court that he relies upon it as a defense. *Scharff v. Klein*, 29 Mo. App. 549. There is no merit in any of the exceptions to the rulings of the court on the evidence.

The court on its own motion instructed the jury as follows: "The court instructs you that plaintiffs in this case sue for fifteen thousand and five hundred feet of lumber, which they claim they sold and delivered to defendant at $16 per thousand, making the total amount claimed $248. The defendant filed an offset claiming a balance of seventy-eight cents due him. The plaintiffs admit the correctness of all the items of credit and debit in defendant's offset, except the $100.85, paid D. J. Allen on the land transaction; $129.34, for culls or rejected lumber, and $4.94, shortage of carload, making a total of $235.13 of credits disputed by plaintiffs; and hence it will be necessary for you to determine from the evidence in the cause as to whether these credits are correct or not. As to the $100.85 claimed by defendant to have been paid D. J. Allen for plaintiffs, the court instructs you that, if you believe and find from the evidence in the cause that the plaintiffs bought a tract of land in Reynolds county from D. J. Allen for $400, and that, after making the bargain, the plaintiffs and defendant made a bargain by which defendant was to pay said Allen for said land and take a deed from said Allen to defendant, and that defendant was simply to hold the title to the land to secure him for the purchase money, and that, when plaintiffs repaid him the purchase money, he, defendant, should convey the land to plaintiffs; and that, in pursuance of this contract, defendant gave his notes to said Allen for the purchase money of said land and took a deed to the land to himself to hold the land until he was repaid, and that the $100.85, claimed as a credit, was paid Allen as a part of the purchase money of said land, then you will allow defendant that credit in making up your verdict; and, unless you so find, you will disallow it. If plaintiffs bought the land of Allen

and contracted with defendant to pay for it and hold the title to it as security for the purchase money, then plaintiffs are liable to defendant for the $100.85 paid Allen, if you find he did pay it to said Allen, no matter if the title to the land is good or bad; nor can plaintiffs avoid the payment of this money to defendant, simply because defendant tried to sell the land after plaintiffs had refused to pay for it; for in that case he had a right to sell the land, and reimburse himself, and pay the balance, if any, he received for it, to plaintiffs.

"As to the item of $129.34, and $4.94, claimed by defendant for rejected lumber and shortage in lumber, the court instructs you, if you find from the evidence in the cause that defendant employed plaintiffs to saw a bill of lumber for T. J. Moss, contractor, Union Pacific Railway Company, to be delivered at Armstrong, Kansas, at $16 per thousand, to be delivered on the cars at plaintiffs' mill, and that it was understood between plaintiffs and defendant that plaintiffs should saw and deliver said lumber on the cars, subject to inspection at its destination, and that plaintiffs should lose any deduction made upon such inspection at the destination of the lumber, then you will allow defendant the said items of $129.34 and $4.94, or such parts thereof, if any, that defendant has shown that he lost by reason of the inspection and rejection of the lumber at Armstrong, Kansas.

"On the other hand, however, if you find from the evidence in the cause that defendant became liable by his contract with plaintiffs to pay them $16 per thousand for said lumber loaded on the cars at plaintiffs' mill, without any inspection on the part of defendant, either at the mill or at the point to which the lumber was shipped, then you will not allow the said items of $129.34 and $4.94."

The court in addition thereto instructed the jury on behalf of the plaintiff: "Before you can find for the defendant upon his counterclaim, so far as the

same relates to the matter of the payment of money for the purchase of land, if you find that any money was so paid out by defendant, you must believe and find from the evidence before you that such payment was made for and on account of the firm of G. H. Hackworth & Co.''

This charge was fair, full and intelligent, and covered all the issues in the case as made by the pleadings and evidence, and no just exception can be taken to it.

The remaining question is, whether the court erred in not arresting the judgment on account of the informality of the verdict, and further erred in entering an affirmative judgment for the defendant against the plaintiffs for seventy-eight cents. As above seen the only issues between the parties were as to whether three items of the defendant's account were correct. There was no conflict of evidence in regard to the amount of these items, but the controversy was as to whether the plaintiffs were chargeable with them. The smallest of these items was for $4.94. When the jury in their verdict found the issues for defendant, they necessarily found for the defendant on each of these items; otherwise their verdict would have been for the plaintiffs, in some sum at least. It is true that, in order to preserve technical accuracy, the court should have instructed the jury to find separately on plaintiffs' cause of action and on the defendant's counterclaim, and should have entered its judgment to correspond with the verdict; but since the judgment does in substance correspond with the verdict, and the amount affected is merely nominal, the case certainly falls within the maxim, *De minimis non curat lex.*

All the judges concurring, the judgment is affirmed.