**Lloyd OWENS and Julia Owens, Plaintiffs and Appellants,**

v.

**Lavon McBRIDE dba Lavon McBride Construction, Inc., Defendant and Respondent.**

**No. 18386.**

Supreme Court of Utah.

Nov. 30, 1984.

---

1. Utah, 671 P.2d 152 (1983).

2. U.C.A., 1953, § 76–1–402(4).

3. U.C.A., 1953, § 76–5–102.

N. George Daines, Logan, for plaintiffs and appellants.

Donn E. Cassity, Salt Lake City, for defendant and respondent.

HOWE, Justice.

Plaintiffs Lloyd and Julia Owens appeal from a judgment entered on a jury verdict adverse to them. They seek vacation of the judgment and remand of the case for a new trial.

Plaintiffs owned a lot on which their son intended to build a house to be constructed by defendant, Lavon McBride. When plaintiffs' son purchased property elsewhere instead, the defendant orally offered to build the house for the plaintiffs for the amount of the bid he had given their son, *viz.*, $32,900, with the plaintiffs furnishing certain items of material and labor. The plaintiffs accepted his offer. When the house was completed, plaintiffs listed it for sale with a realtor, but were unable to find a buyer. At that time plaintiff Lloyd Owens and the defendant met and modified their earlier agreement. However, the parties differ as to what modification was made. According to the plaintiffs, they were anxious to enlist the help of the defendant in selling the house. Thus they proposed that both parties endeavor to sell it and divide the proceeds remaining after payment of the defendant's costs of construction and payment of $9,000 to plaintiffs for the lot. When the house still did not sell, the plaintiffs claim that a further modification was made whereby the defendant agreed to accept a conveyance of the house and lot from the plaintiffs and that upon his sale of the property he would pay them $9,000. The defendant disputes that such modifications were made and contends that the only modification made to the original agreement was that plaintiffs would convey the house and lot to the defendant, who would sell it and first reimburse himself for the amount of the bid, plus extras ordered by the plaintiffs, selling expenses and interest on the construction loan which defendant had obtained. The remaining balance would belong to the plaintiffs.

The plaintiffs conveyed the house and lot to the defendant who subsequently sold it. Plaintiffs did not participate in the sale but became aware of it when the buyers took possession. After several months, plaintiffs contacted defendant and requested that he settle with them. A meeting took place, and upon the demand of the plaintiffs, defendant gave them a check for $9,000. However, he stopped payment on the check the following day. He claimed that his costs of construction, selling expenses and interest on the construction loan to the date of sale exceeded the sales price of the property, leaving him with nothing to pay the plaintiffs.

Plaintiffs brought this action to recover $9,000 for the lot, and defendant counterclaimed for $12,590 for unreimbursed costs of construction and sale, and interest expense. At the conclusion of the presentation of evidence, plaintiffs moved for a dismissal of that portion of the defendant's counterclaim which sought interest on the construction loan. The court granted the motion. While the record is not entirely clear, it appears that the granting of the motion reduced the maximum amount the defendant could recover on his counterclaim to $9,000. While the plaintiffs disputed throughout the trial the amount of many items of expense claimed by defendant and their appropriateness, in the interest of simplicity and clarity they agreed that a jury verdict for the defendant would entirely offset any obligation to pay for the lot. The court thereupon determined that it would give the jury two forms of verdict, one of which they would sign. One form stated, "We find for the plaintiff and against the defendant." The other form stated, "We find for the defendant and against the plaintiff." The court observed that in proceeding in this manner "then you don't have to explain all this machination to them." No money figures were given to the jury either in the instructions or in the two forms of verdict. The jury was not told that part of the defendant's counter-

claim had been dismissed. If the jury found for the plaintiffs, the court intended to award them $9,000 plus appropriate interest. However, if the jury found for the defendant, the court intended to award nothing to either party on the basis that the $9,000 recovery on the counterclaim would be a full offset against the plaintiffs' claim. The parties stipulated to this procedure.[1]

The court gave to the jury the following instruction setting forth the plaintiffs' claim:

> You are instructed that the plaintiffs allege that after a variety of financial arrangements the plaintiffs entered into a contract on or about January of 1980 wherein the plaintiffs agreed to sell to the defendant a lot for the sum of $9,000 and the defendant agreed to buy the same and pay the $9,000 when the home was sold.

The court also gave the following instruction to explain the essence of the defendant's counterclaim:

> You are instructed that the defendant Lavon McBride alleges that the plaintiffs contracted with him to build a house for them on their lot for $32,900 plus the costs of the items that were to go into the house that were to be paid for by the plaintiffs and other costs attributable to his expense in building the house, and that the plaintiffs have breached this contract....

These two instructions were the only instructions given which dealt with the facts of the case and the theories of the parties. All the other instructions were stock instructions.

After deliberating, the jury returned both forms of verdict unsigned. When questioned by the court, the foreman explained that:

> The thinking of the entire jury was that if both losses could be combined and cut halfway down the middle, and each select

**1.** In view of this stipulation, we express no opinion on the correctness of this analysis or procedure.

half of the loss, this would be fine, but inasmuch as we couldn't do that, we were instructed to either judge for one or the other or neither one, we went for neither one.

Upon further probing by the court, the foreman added: "We thought neither side really had a valid contract with the other. This was our reasoning." The court polled the jury and found that they unanimously agreed with the statement of their foreman. Counsel for the plaintiffs objected to the verdict, and the court dismissed the jury. The plaintiffs afterwards filed a motion for a new trial, or in the alternative, for a judgment in their favor for $9,000 notwithstanding the verdict. This motion was denied, and they bring this appeal.

The two instructions were intended by the court to present to the jury the divergent theories of the plaintiffs and defendant. The two verdict forms were given to afford the jury the opportunity to record which theory they found to be true. They opted to find neither theory true but instead endeavored to treat the parties as partners and simply make, as far as they could, each party bear one-half of the combined losses. While this method may have accorded with their sense of justice, it was entirely outside of the issues of the case and outside the forms of verdict given them. The defendant's counsel in his brief correctly observes that the "jury was simply to decide whether plaintiffs' interpretation and understanding of the parties' agreement was correct, or whether defendant's interpretation and understanding was correct." By finding that neither side proved what they alleged, the jury left the issue unresolved.

Both parties claim and admit that there was a modified contract between them when the plaintiffs conveyed the lot with the completed house thereon to the defendant. The terms of that contract must be found before the dispute between them can be resolved. Finding that neither party proved the contract they or he alleged does not settle the dispute. Defendant argues that "for the jury to decide that neither party prevailed is as plausible a decision as if they had decided for one party or the other." We cannot accept that view. Defendant collected and kept the proceeds from the sale of the house and lot. The lot undisputably was owned by the plaintiffs who conveyed it without any payment to them. While the jury found that plaintiffs did not prove that defendant unconditionally agreed to pay for the lot, they also found that defendant did not prove any contract which would give him the right of entitlement to the full proceeds of the sale. Yet the effect of the verdict is to allow defendant to keep all the proceeds and escape all payment to the plaintiffs although he did not meet his burden of proof of entitlement. This is not akin to a case where a plaintiff simply fails to prove by a preponderance of evidence that a defendant is negligent and the defendant on his counterclaim likewise fails to prove the plaintiff is guilty of negligence. In such a case, a jury verdict that neither party met his burden of proof disposes of the issues. *Fritz v. Roberts*, 264 Ky. 418, 94 S.W.2d 1016 (1936). Here, both parties agree that there was a contract that governs disposition of the funds. Without finding what that contract was, it cannot be determined who is entitled to the funds.

■ A general verdict is a finding or pronouncement by a jury on all the issues submitted to it. *Thorne v. Thorne*, Mo., 350 S.W.2d 754 (1961). A verdict must find on all the issues, *White v. Huffmaster*, 321 Mich. 225, 32 N.W.2d 447 (1948), or as it is sometimes stated, the verdict must be responsive to the issues as framed by the theory on which the case was tried as well as the instructions. *Schulte v. Crites*, Mo. App., 318 S.W.2d 387 (1958); *National Cash Register Co. v. Kay*, 230 Mo.App. 1046, 93 S.W.2d 260 (1936). The verdict must find for or against the parties between whom the issues are raised. *MFA Cooperative Association of Ash Grove v. Elliott*, Mo.App., 479 S.W.2d 129 (1972); *Thorne v. Thorne, supra; National Cash Register Co. v. Kay, supra.* Where a controverted material issue is submitted to a

jury, both the plaintiff and the defendant are entitled to have a fair determination of that issue. *Winston v. McKnab,* 134 Kan. 75, 4 P.2d 401 (1931). Although courts will liberally construe verdicts in an effort to find the jury's intent, *MFA Cooperative Association of Ash Grove v. Elliott, supra; Boone v. Richardson,* Mo.App., 388 S.W.2d 68 (1965); *Thorne v. Thorne, supra; Fritz v. Roberts,* 264 Ky. 418, 94 S.W.2d 1016 (1936), and will indulge in every reasonable implication to sustain the verdict, *National Cash Register Co. v. Kay, supra,* when the verdict fails to find all that there is in issue, it is fatally defective and such defect is substantial and reversible error. *Hart Grocery Co. v. Hunt,* 175 Okl. 32, 52 P.2d 66 (1935); *Maly v. Lamerton,* 113 Okl. 168, 240 P. 716 (1925); *National Cash Register Co. v. Kay, supra.*

Application of the foregoing rules leaves us no alternative but to reverse the judgment of the trial court entered upon the jury verdict and remand the case for a new trial. The sole issue to be decided by the jury was whether the plaintiffs' or the defendant's version of the modified agreement was correct. The case was tried by counsel on that basis, and the trial court carefully framed its instructions to the jury accordingly. A verdict in favor of one party would necessarily be a verdict against the other. Since the theories of the parties were opposite to each other, a verdict for neither party does not resolve an issue which has been presented and framed as counsel and the court did here.

We find helpful and persuasive the case of *Commercial National Bank of Kansas City v. White,* Mo., 254 S.W.2d 605 (1953) where the defendant purchased with cash a cashier's check for $12,000 from the plaintiff bank. Later, the plaintiff claimed that it had made an error in the amount of the check, that defendant had paid only $1,200 and that it should have made the check for only $1,200. The plaintiff contacted the defendant who thereupon gave the plaintiff his promissory note for the difference of $10,800. When defendant defaulted in his payment of the note, the plaintiff brought suit. The defendant counterclaimed asserting that no error had in fact been made and that he had consequently executed the note without consideration. He counterclaimed for cancellation of the note, for recovery of all amounts he had paid thereon, and for damages. The jury signed and returned one of the forms of verdict given them, finding for the plaintiff on its complaint to recover the balance owing on the note, but returned no verdict on the counterclaim. The defendant appealed claiming that the forms of verdict provided the jury should have provided for it to find against the plaintiff on its complaint and against the defendant on his counterclaim, i.e., a verdict where neither party would recover against the other. The Supreme Court of Missouri held that the verdict which was returned was sufficiently responsive and disposed of the issues of the case since a verdict for the plaintiff necessarily was a verdict against the defendant on his counterclaim. It rejected the defendant's contention that the jury should have been provided with a form of verdict whereby it could have found against both parties under the facts of the case. Said the court at 608:

Either plaintiff was entitled to a verdict for the undisputed balance on the note or defendant was entitled to have refunded the payments credited on the purported indebtedness evidenced by the note. Both parties could not win; neither could both parties lose. Clearly, a finding for one would necessarily include a finding against the other. It all depended on whether defendant paid $1,200 or $12,000 for the cashier's check dated December 31, 1946. A verdict against plaintiff on its petition and against defendant on his counterclaim was not authorized under the law as applied to the facts of the case. *Ferd Bauer Engineering & Contracting Co. v. Arctic Ice and Storage Co.,* 186 Mo.App. 664, 172 S.W. 417, 418; *Fisher v. Ozark Milk Service, Inc.,* 356 Mo. 95, 201 S.W.2d 305, 309. The situation may well differ where the claims arise out of another transaction between

the parties or where a party having the burden adduces no evidence on the issue.

Similarly, here, both parties conceded that they modified their original agreement, but they advanced two different theories as to what the modified agreement contained. The only evidence adduced by the parties was in support of one or the other of those theories. No evidence supporting any other theory was presented. The task of the jury was to determine as to which theory the evidence preponderated. Although the fulfillment of this task may have been difficult and even unpleasant for the jury, no determination short of a resolution of that issue can effectively dispose of this case. As in *Commercial National Bank of Kansas City v. White, supra,* both parties could not lose. *See Ferd Bauer Engineering & Contracting Co. v. Arctic Ice and Storage Co.,* 186 Mo.App. 664, 172 S.W. 417 (1915) for an example of where both parties could not win.

The judgment is reversed and the case remanded for a new trial. Costs are awarded to plaintiffs.

HALL, C.J., and STEWART and DURHAM, JJ., concur.

ZIMMERMAN, J., does not participate herein.